IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

HAROLD MOSS,                          )
                                      )
         Plaintiff,                   )
                                      )
    v.                                )    CASE NO. 3:24-CV-770-WKW
                                      )              [WO]
JAY JONES, *et al.*,                  )
                                      )
         Defendants.                  )

## MEMORANDUM OPINION AND ORDER

## I.  INTRODUCTION

This 42 U.S.C. § 1983 action proceeds on the amended complaint filed by Plaintiff Harold Moss, a *pro se* inmate, against four Defendants:  Sheriff Jay Jones, Dr. John McFarland, Nurse Core, and Nurse S. Soupanthoung.  (Doc. # 62.)  Before the court is Defendants' motion to dismiss or, in the alternative, for summary judgment, accompanied by a brief in support and exhibits.  (Docs. # 73, 74.)  In their motion, Defendants argue, among other things, that Plaintiff failed to exhaust administrative remedies before filing suit.  Plaintiff filed three documents in response to Defendants' motion.  (Docs. # 76–78 (collectively, "Plaintiff's response").)  Defendants filed a reply brief.  (Doc. # 83.)  After careful consideration, because Defendants' motion argues for dismissal of Plaintiff's claims based on his failure to exhaust administrative remedies prior to filing this suit, that portion of

Defendant's motion will be construed as an unenumerated Rule 12(b) motion to dismiss, *see infra* Part IV.A.2, and that construed motion to dismiss will be granted. Otherwise, Defendants' motion will be denied as moot.

## II.  JURISDICTION AND VENUE

Subject matter jurisdiction is proper under 28 U.S.C. § 1331 (federal question).  Personal jurisdiction and venue are not contested.

## III.  BACKGROUND

### A.  Procedural History

On November 25, 2024,[1] Plaintiff filed a *pro se* complaint under 42 U.S.C. § 1983.  (Doc. # 1.)  Plaintiff's original complaint named the Lee County Justice Center, the Auburn Police Department, and the Sheriff of Lee County, Alabama, as Defendants.  (*See* Doc. # 1.)  After filing his complaint, Plaintiff filed a letter to the court (Doc. # 4), which was construed as a motion to amend and for preliminary injunctive relief.  (Doc. # 5.)  The Sheriff of Lee County, through counsel, was ordered to show cause why the court should not order Plaintiff's requested injunctive relief.  (*Id.*)

---

[1] "Under the 'prison mailbox rule,' a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009).  Absent evidence to the contrary, the court "assume[s] that a prisoner delivered a filing to prison authorities on the date that he signed it." *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014).  Plaintiff signed and dated his complaint "11/25/24." (Doc. # 1 at 4.)  Therefore, under the "prison mailbox rule," Plaintiff's complaint is deemed filed on November 25, 2024, even though it was not received and docketed until December 2, 2024.

Between the issuance of the show-cause order on December 12, 2024 (*id.*), and the Sheriff's response to the order submitted on January 2, 2025 (Doc. # 16), Plaintiff filed ten notices (letters) to the court (*see* Docs. 6–15).  After the Sheriff filed his response, Plaintiff went on to file nine notices (letters) to the court (Docs. # 22–30), an unsolicited reply to the Sheriff's response (Doc. # 31), six more notices and letters to the court (Docs. # 32–37), and multiple motions (Docs. # 38–42).[2]  In an attempt to clarify the issues in this case and to determine whether Plaintiff had stated a current medical emergency, a status conference was scheduled for January 13, 2026.  (Doc. # 59.)  At that status conference, it was learned that this case concerns Plaintiff's issues with getting a certain medication in November and December 2024.  (Doc. # 69.)  Plaintiff also was informed during that status conference that constantly filing notices and motions delays his case.  (*See id.*)

By Memorandum Opinion and Order dated December 17, 2025, Plaintiff was instructed to file an amended complaint.  (Doc. # 60 at 7–9.)  On December 22, 2025,[3] Plaintiff filed an amended complaint against five Defendants:  the Lee County Detention Center (LCDC); Sheriff Jay Jones; Dr. John McFarland; Nurse Core; and Nurse S. Soupanthoung.  (Doc. # 62.)  In a Memorandum Opinion and Order dated

---

[2] During the pendency of this action, Plaintiff has filed upward of 50 notice letters and miscellaneous motions.

[3] Plaintiff signed and dated his amended complaint "12/22/25."  (*See* Doc. # 62 at 4.)  Therefore, under the "prison mailbox rule," *see supra* note 1, Plaintiff's amended complaint is deemed filed on December 22, 2025, even though it was not received and docketed until December 29, 2025.

January 27, 2026, Plaintiff's claims against the LCDC were dismissed because the detention center is not an entity subject to suit under § 1983. (Doc. # 70 ("January 27 Mem. Op. & Order").) The January 27 Mem. Op. & Order also directed service of the amended complaint on the remaining Defendants. (Doc. # 70.)

Defendants responded to the amended complaint by filing a motion to dismiss or, in the alternative, for summary judgment, accompanied by a brief in support and exhibits. (Docs. # 73, 74.) Plaintiff was given an opportunity to provide evidence in support of his position. (Doc. # 75.) The parties now have fully briefed their positions with respect to Defendants' motion. (Docs. # 76–78, 83.)

B.    **Plaintiff's Amended Complaint**

In his amended complaint, which is signed under penalty of perjury, Plaintiff alleges that, after he was booked into the LCDC on or around October 22, 2024, he was unable to urinate for days and that, when he finally could urinate, he had blood in his urine. (Doc. # 62 at 2–3.) Plaintiff also claims that he was unable to eat or drink without throwing up blood. (*Id.* at 3.) At some point, Plaintiff was admitted to the East Alabama Hospital, where he underwent two surgeries. Plaintiff contends that, on November 7, 2024, he was discharged from the hospital within ten minutes

4

of his second surgery.  Back at the LCDC, Plaintiff was forced to sleep on a cold cell floor in booking.[4]  (*Id.*)

Furthermore, upon release from the hospital, Plaintiff was provided with a full bottle of a prescribed medication.  He claims that he did not receive his first dose of this medication until 30 days after his release from the hospital.  Plaintiff states that he was forced to endure painful nights because of the lack of adequate medical attention by Sheriff Jones and the medical staff acting on his behalf.  He also claims to have "turned in numerous grievances, also tickets . . . on the jail k[i]osk system to [Sheriff] Jay Jones only to [have the grievances] go unanswered."  (*Id.*)

As relief, Plaintiff seeks $800,000 "for the many nights [he has] had to suffer and endure pain," a "lack of proper medical attention," and for not giving his medication to him "in a[] proper[,] adequate time."  (*Id.* at 4.)

C.    **Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment, Brief in Support, and Exhibits**

In their motion, Defendants argue that Plaintiff's claims are due to be dismissed because he has not exhausted available administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a).  (*See* Doc. # 73 ¶ 2; Doc. # 74 at 15–19.)  Defendants also argue that Plaintiff's official-capacity claims against Defendants are barred by the Eleventh Amendment (Doc.

---

[4] This liberally construed conditions-of-confinement claim was abandoned by Plaintiff during the status conference held on January 13, 2026.  (*See* Doc. # 69.)

# 73 ¶ 3; Doc. # 74 at 19–20) and that they are entitled to qualified immunity with respect to Plaintiff's individual-capacity claims (Doc. # 73 ¶ 4; Doc. # 74 at 20–36). However, the only argument pertinent to the analysis here is that Plaintiff failed to exhaust available administrative remedies prior to filing suit.

To support their position that Plaintiff failed to exhaust available administrative remedies, Defendants submitted the declaration of Lieutenant Ashley Ogletree (Doc. # 74-1 (Ex. A)); Section 16 of the LCDC's Inmate Handbook, titled "Grievances" (Doc. # 74-2 (Ex. B)); multiple grievances filed by Plaintiff (Doc. 74-3 (Ex. C)); and a redacted copy of a different inmate's grievance appeal for the court's reference (Doc. # 74-4 (Ex. D)).  These filings establish the following:

(1)    There is a grievance procedure at the LCDC (Doc. # 74 at ¶ 20; Ex. A ¶ 3);

(2)    The LCDC's grievance procedure is made available to inmates as part of the Inmate Handbook, which can be found on the jail kiosk and tablets located in the inmate's pod (Doc. # 74 ¶ 21; Ex. A ¶¶ 3–4; *see also* Ex. B (Section 16 of the Inmate Handbook, titled "Grievances"));

(3)    An inmate may file a grievance using the NCIC system made available to all inmates on the kiosk or tablets in their pods (Doc. # 74 ¶ 22; Ex. A ¶ 5);

(4)    When filing a grievance, the inmate chooses an option from a drop-down menu—*e.g.*, "grievance," "general request," or "grievance appeal" (Doc. # 74 ¶ 23; Ex. A ¶ 6);

(5)    The inmate can title his grievance as he chooses, but he does not get to choose to whom a grievance is assigned (Doc. # 74 ¶ 24; Ex. A ¶ 7);

6

(6)    Officers review the grievances from their NCIC account on sheriff's office computers and can assign the grievance to the proper officer (Doc. # 74 ¶ 25; Ex. A ¶ 8);

(7)    Grievances are first answered by an appropriate staff member at the lowest level in the chain of command (Doc. # 74 ¶ 22; Ex. B ¶ 16.2);

(8)    When a grievance is answered, the inmate will receive the answer in his account on his tablet or kiosk (Doc. # 74 ¶ 26; Ex. A ¶ 9);

(9)    If the inmate is unsatisfied with the answer, he can file a grievance appeal (Doc. # 74 ¶ 26; Ex. A ¶ 9; Ex. B ¶ 16.3);

(10)   To file a grievance appeal, all the inmate must do is select "grievance appeal" from the drop-down menu where he initially selected "grievance" (Doc. # 74 ¶ 27; Ex. A ¶ 10);

(11)   If the inmate continues to be unsatisfied with the answer he receives to his grievance appeal, the inmate may continue to appeal up the chain of command until his grievance reaches the Sheriff, who will make the final decision regarding the grievance (Doc. # 74 ¶ 28; Ex. B ¶ 16.3); and

(12)   Although Plaintiff filed multiple grievances before and after filing this lawsuit, he neglected to file any grievance appeals (Doc. # 74 ¶¶ 29–31; Ex. A ¶¶ 11–13; *compare* Ex. C (Plaintiff's grievances filed in November and December 2024, all marked "Type: Grievance") *with* Ex. D (redacted copy of another inmate's grievance appeal marked "Type: Grievance Appeal")).

## D.    **Plaintiff's Response & Defendants' Reply**

In response to Defendants' motion, Plaintiff filed three documents:  an unsigned response (Doc. # 76) and two notices (letters) to the court, one unsigned (Doc. # 77) and the other signed (Doc. # 78).  Collectively, these documents are considered Plaintiff's response to Defendants' motion.  Plaintiff's response is

difficult to discern, but for the most part, he appears to rehearse the allegations in the amended complaint.  With respect to his exhaustion of administrative remedies, however, he states that he "followed all the jail administrative remedies" and that he "turn[ed] in all the proper grievances," but "they all went unanswered deliberately." (Doc. # 77 at 7; *see also* Doc. # 78 at 1 (Plaintiff stating that "all the administrative remedies" that he has "exhausted," along with the "numerous grievances" he has turned in have been "deliberately[,] intentionally ignored by [Sheriff] Jay Jones").)

In their reply brief, Defendants assert that Plaintiff's response "did not include any 'affidavit[], declaration[], or other evidentiary materials demonstrating a genuine dispute as to a material fact for trial.'"  (Doc. # 83 at 1–2 (quoting Doc. # 75 at 2).)  Additionally, Defendants highlight the fact that none of the filings comprising Plaintiff's response was signed under penalty of perjury.  (*Id.* at 2.) Defendants conclude that, therefore, Plaintiff's response and any statements contained therein may not be considered evidence. (*Id.*)  This contention would be correct if Defendants' motion were construed as a motion for summary judgment; however, Defendants' motion is construed as an unenumerated Rule 12(b) motion to dismiss based on Plaintiff's failure to exhaust administrative remedies. Accordingly, Plaintiff's responses will be considered.

Furthermore, Defendants reiterate their argument that Plaintiff was required by the PLRA to exhaust the LCDC's grievance procedure before filing his lawsuit

8

but did not do so.  (*See id.* at 2–3.)  Defendants also address the arguments made by Plaintiff in his response, namely, that he filed grievances, some even directly to Sheriff Jones.  But, as Defendants contend, Plaintiff "stops short of asserting that he filed any grievance appeals."  (*Id.* at 2.)

## IV.  DISCUSSION

### 1.  Exhaustion of Administrative Remedies

Defendants argue that Plaintiff failed to exhaust his administrative remedies before filing suit.  (Doc. # 74 at 15–19.)  Defendants' assertion of this affirmative defense will be treated as an unenumerated Rule 12(b) motion to dismiss.

### 1.  *The Exhaustion Requirement*

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. §] 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Its purpose is to provide "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

9

The U.S. Supreme Court has held that the "[PLRA's exhaustion] provision 'requires proper exhaustion' of available prison grievance procedures, meaning a prisoner 'must complete the administrative review process in accordance with the applicable procedural rules . . . as a precondition to bringing suit in federal court.'" *Perttu v. Richards*, 605 U.S. 460, 465 (2025) (quoting *Woodford*, 548 U.S. at 88, 93). "[E]xhaustion is mandatory under the PLRA, and unexhausted claims cannot be brought in court." *Pavao v. Sims*, 679 F. App'x 819, 823 (11th Cir. 2017) (per curiam) (citing *Jones v. Bock*, 549 U.S. 199, 211 (2007)).

### 2.  *Unenumerated Rule 12(b) Motion to Dismiss for Failure to Exhaust Administrative Remedies*

Exhaustion under the PLRA is a "standard affirmative defense" and is neither jurisdictional nor a pleading requirement. *Perttu*, 605 U.S. at 469. In the Eleventh Circuit, an exhaustion defense raised in a motion for summary judgment is treated "as an unenumerated Rule 12(b) motion to dismiss." *Maldonado v. Unnamed Defendant*, 648 F. App'x 939, 951 (11th Cir. 2016) (per curiam); *see also Bryant v. Rich*, 530 F.3d 1368, 1374–75 (11th Cir. 2008) ("Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." (cleaned up)). "In this context, the judge may consider facts outside of the pleadings and resolve factual disputes,

10

as long as those factual disputes do not decide the merits, and the parties have had a sufficient opportunity to develop the record." *Maldonado*, 648 F. App'x at 951 (citing *Bryant*, 530 F.3d at 1376).

### 3. *The Two-Step Process for Deciding a Motion to Dismiss for Failure to Exhaust Administrative Remedies*

In *Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008), the Eleventh Circuit "established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust." *Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1209 (11th Cir. 2015) (citing *Turner*, 541 F.3d at 1082); *accord McGuire-Mollica*, 146 F.4th 1308, 1314 (11th Cir. 2025). At the first step, "the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." *Turner*, 541 F.3d at 1082. If the factual allegations, viewed in that light, show that the prisoner failed to exhaust available administrative remedies, the district court must dismiss the complaint. *See McGuire-Mollica*, 146 F.4th at 1314 (citing *Turner*, 541 F.3d at 1082). If dismissal is not warranted under the first *Turner* step on the prisoner's view of the facts, the process moves to the second step, where the district court "makes specific findings to resolve disputes of fact" concerning exhaustion.[5] *See*

---

[5] No party has argued that the U.S. Supreme Court's pronouncement in *Perttu v. Richards*—"that parties are entitled to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim protected by the Seventh Amendment," 605 U.S. 460, 479 (2025)—which relates to *Turner*'s second step, is relevant here.

*Whatley*, 802 F.3d at 1209 (citing *Turner*, 541 F.3d at 1082–83).  The district court "then decides whether under those findings the prisoner has exhausted his available administrative remedies."  *Turner*, 541 F.3d at 1083.  Throughout this two-step process, the burden is on the defendant to show that the plaintiff has failed to exhaust his available administrative remedies.  *Id.* at 1082.

### 4.      *Exhaustion Analysis Under the* Turner *Two-Step Framework*

Defendants' supporting brief and exhibits establish the existence of a grievance procedure at the LCDC (Doc. # 74 ¶ 20 ("The [LCDC] has a procedure inmates are to follow when seeking to file a grievance with the jail."); Ex. A ¶ 3) and that this grievance procedure "is made available to inmates as part of the Inmate Handbook" (Doc. 74 ¶ 21; Ex. A ¶ 3; *see also* Ex. B (Section 16 of the Inmate Handbook, titled "Grievances").  Defendants also explain how the LCDC's grievance procedure works, including how inmates go about filing a grievance and the grievance-appeals process.  (Doc. # 74 ¶¶ 22–28; Ex. A ¶¶ 5–10.)  Defendants make clear that, in filing a grievance, "[t]he inmate can title the grievance how he chooses and sometimes will include an officer's name or the sheriff's name in the title" but "the inmate does not get to choose to whom the grievance is assigned." (Doc. # 74 ¶ 24; Ex. A ¶ 7.)

As for Plaintiff's utilization of the LCDC's grievance procedure, Defendants contend that after Plaintiff returned to the LCDC from the hospital on November 7,

2024, he "filed approximately 10 grievances" before initiating this lawsuit (Doc. # 74 ¶ 29), and Defendants provide copies of those grievances (*see* Ex. C (containing 27 pages of grievances filed by Plaintiff)). The "approximately 10 grievances" filed by Plaintiff between his return to the LCDC on November 7, 2024, and his commencement of this action on November 25, 2024,[6] are as follows:

| No. | Grievance ID | Date Filed | Time Filed |
|---|---|---|---|
| 1 | #TK-03ZzHuW2WUMc | 11-09-2024 | 3:22 p.m. |
| 2 | #TK-GndRmPXYOOzH | 11-09-2024 | 9:29 p.m. |
| 3 | #TK-F7FeXcBpDW4J | 11-12-2024 | 11:17 a.m. |
| 4 | #TK-R11B3wvoITSu | 11-15-2024 | 10:04 a.m. |
| 5 | #TK-M7ha0VSEt21W | 11-17-2024 | 8:55 a.m. |
| 6 | #TK-xee6Ji9Kfhzd | 11-17-2024 | 7:00 p.m. |
| 7 | #TK-vAfzj7R3S0A4 | 11-18-2024 | 4:53 p.m. |
| 8 | #TK-YZrptQErbn0n | 11-19-2024 | 10:28 p.m. |
| 9 | #TK-EHnudjVcjKPx | 11-20-2024 | 7:48 a.m. |
| 10 | #TK-p5sQJ8OGzLJ3 | 11-23-2024 | 3:04 p.m. |

(*See* Ex. C at 14–26.)[7] Notwithstanding Plaintiff's submission of these grievances, Defendants assert that he failed to file any grievance *appeals*. (Doc. # 74 ¶ 30; Ex. A ¶ 12; *compare* Ex. C (grievances filed by Plaintiff in November and

---

[6] Plaintiff also references a few grievances he filed *after* commencing this action on November 25, 2024. (*See* Doc. # 76 at 4.) Similarly, Defendants point to numerous grievances submitted by Plaintiff in 2025, well after he filed his complaint. (*See* Doc. # 83 at 3; Doc. # 83-1 ¶ 5 (Ex. E) (Second Declaration of Lt. Ashley Ogletree); *see also* Doc. # 83-2 (Ex. F) (containing grievances submitted by Plaintiff in February, March, and July 2025).) However, none of the grievances submitted by Plaintiff after the commencement of this action offers help to Plaintiff in refuting Defendants' contention that he failed to exhaust administrative remedies prior to filing suit.

[7] The phrase "approximately 10 grievances" is used because Plaintiff submitted two grievances on November 25, 2024—the date his complaint is deemed filed. Counting the two grievances submitted by Plaintiff on November 25, 2024—#TK-eKjnCDUuAQkc (filed 11-25-2024 at 9:31 am) and #TK-ukuRO5SxZsSI (filed 11-25-2024 at 6:03 pm)—Plaintiff filed twelve grievances between November 7, 2024 and November 25, 2024.

December 2024, all denoted "Type: Grievance") *with* Ex. D (redacted example of a grievance appeal filed by a different inmate denoted "Type: Grievance Appeal").)

Critically, Plaintiff does not dispute Defendants' assertion that he failed to file any grievance appeals and, thus, did not exhaust administrative remedies before he filed his complaint. Instead, Plaintiff simply notes the "grievances[,] . . . tickets[,] and times and dates [he] turned [them] in on the k[i]osk jail system." (Doc. # 76 at 3.) Below is a list of grievances that Plaintiff alleges he filed during the applicable timeframe (*i.e.*, between November 7, 2024, and November 25, 2024):

| No. | Grievance ID | Plaintiff's Desired Recipient | Date Filed | Time Filed |
|---|---|---|---|---|
| 1 | #TK-03ZzHuW2WUMc | Jay Jones | 11-09-2024 | 3:22 p.m. |
| 2 | #TK-FZ1zrcbh1KWQ | Jail Administrator | 11-09-2024 | 3:33 p.m. |
| 3 | #TK-GndRmPXYOOzH | Jail Supervisor | 11-09-2024 | 9:29 p.m. |
| 4 | #TK-F7FeXcBpDW4J | Jail Administration | 11-12-2024 | 11:17 a.m. |
| 5 | #TK-M7ha0VSEt21W | Jay Jones | 11-17-2024 | 8:55 a.m. |
| 6 | #TK-0jypLSDMBn21 | Captain Jones | 11-22-2024 | 11:09 a.m. |
| 7 | #TK-s8WTQjL5V6vd | Jay Jones | 11-23-2024 | 3:06 p.m. |
| 8 | #TK-eKjnCDUuAQkc | Jay Jones | 11-25-2024 | Time not provided |

(Docs. # 76, 77.)[8]

Plaintiff states that he "followed all the jail administrative remedies" and "turn[ed] in all the proper grievances" but that "they all went unanswered deliberately." (Doc. # 77 at 7.) However, all of the grievances filed by Plaintiff during the applicable timeframe—other than those that do not exist according to

---

[8] In their reply, Defendants contend that three of the eight grievances purportedly filed by Plaintiff during the relevant timeframe—#TK-FZ1zrcbh1KWQ; #TK-0jypLSDMBn21; and #TK-s8WTQjL5V6vd—do not exist. (*See* Doc. # 83 at 3; Ex. E ¶¶ 3–4.)

Defendants, *see supra* note 8—were answered.  (*See* Ex. C at 11–26.)  Although some of Plaintiff's grievances were not answered in a timely manner (*see* Ex. C at 15–20, 23), multiple grievances were answered within the 72-hour timeframe provided in Section 16 of the Inmate Handbook (*see* Ex. C at 14, 21, 24–26; *see also* Ex. B ¶ 16.2 (stating that grievances "will be investigated and answered, in writing, within 72 hours of the time it is received, excluding holidays and weekends")), and Plaintiff could have submitted appeals for any of the timely answered grievances. Moreover, to the extent that Plaintiff argues his grievances were "deliberately[,] intentionally ignored by [Sheriff] Jay Jones," Section 16 of the Inmate Handbook expressly states that "[g]rievances are first answered by the appropriate staff at the lowest level in the chain of command" (Ex. B ¶ 16.2), and if an inmate is not satisfied with the first answer to his grievance, he "may send a grievance to the next higher command level" and "continue to send it through the chain of command, up to the Sheriff, who will make the final decision" (Ex. B ¶ 16.3).

At step one of the *Turner* two-step framework, Plaintiff's version of the facts is taken as true where there is a conflict in the facts.  Plaintiff's version of the material facts does not conflict with Defendants' motion and attached exhibits showing that there is a grievance procedure available to Plaintiff at the LCDC, that Plaintiff knew about the grievance procedure given the number of grievances he filed before and after initiating this suit, and that Plaintiff filed multiple grievances before and after

filing this lawsuit but no grievance *appeals*.  The PLRA is clear:  A prisoner cannot bring suit "until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); *see also Pavao v. Sims*, 679 F. App'x 819, 823 (11th Cir. 2017) (per curiam) ("[E]xhaustion is mandatory under the PLRA, and unexhausted claims cannot be brought in court." (citing *Jones v. Bock*, 549 U.S. 199, 211 (2007))).[9]  The evidence submitted by Defendants demonstrates that a grievance-appeal procedure was available to Plaintiff at the LCDC.  (*See* Ex. A ¶¶ 9–10; Ex. B (Section 16 of the Inmate Handbook, titled "Grievances"); *see also* Ex. D (redacted copy of another inmate's grievance appeal).)  When, as here, there is grievance procedure in place, a prisoner must "exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit."  *Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000).

---

[9] The PLRA's mandatory exhaustion requirement has an important qualifier:  It only applies to *available* remedies.  *See* 42 U.S.C. § 1997e(a) (providing that a lawsuit under § 1983 cannot be brought "until such administrative remedies *as are available* are exhausted" (emphasis added)).  The United States Supreme Court has recognized "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief" or, in other words, is "unavailable."  *Ross v. Blake*, 578 U.S. 632, 642 (2016).  As articulated in *Ross*, a grievance procedure is unavailable (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," *id.*; (2) when the process is "so opaque that it becomes, practically speaking, incapable of use," *id.*; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation," *id.* at 644.  The burden is on the defendant to show the availability of an administrative remedy.  *Geter v. Baldwin State*, 974 F.3d 1348, 1356 (11th Cir. 2020).  Once the defendant meets that burden, the burden shifts to the plaintiff, who then must demonstrate that the grievance procedure was "subjectively" and "objectively" unavailable to him.  *Id.*  Defendants have shown that a grievance procedure (specifically, a grievance-appeal procedure) was available to Plaintiff.  Plaintiff, on the other hand, has not met his burden of demonstrating that the grievance procedure (or the grievance-appeal procedure) was unavailable to him.  Indeed, he admits submitting multiple grievances before and after filing this lawsuit, and he notably does not dispute Defendants' evidence that shows he did not file any grievance *appeals*.

16

And the fact that the Inmate Handbook uses the permissive "may"[10] rather than the mandatory "shall" with respect to inmates filing grievance appeals does not negate Plaintiff's obligation to utilize the available grievance-appeal procedure. *See, e.g.*, *Johnson v. Thyng*, 369 F. App'x 144, 147 (1st Cir. 2010) (per curiam) ("Whatever the merits of [the plaintiff]'s contention that level three of the prison grievance process is optional, rather than mandatory, PLRA, nonetheless, speaks in terms of requiring that all 'available' remedies be exhausted." (first citing § 1997e(a) ("No action shall be brought . . . until such administrative remedies as are available are exhausted"); and then citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002) ("All 'available' remedies must . . . be exhausted."))); *see also Key v. Van Reil*, 2025 WL 777707, at *4 (M.D. Ala. Mar. 11, 2025) (holding that, despite the permissive language in the county jail's grievance procedure, *see id.* at *3 & n.5, "Plaintiff did not avail himself of the administrative remedies provided in the Houston County Jail Inmate Handbook by appealing the denial of any grievances").

Plaintiff has not refuted Defendants' argument or evidence that he failed to submit any grievance appeals before filing a lawsuit. The unrefuted evidence submitted by Defendants thus indicates that Plaintiff did not file any grievance

---

[10] "If [an inmate] is not satisfied with the first answer to his grievance, [he] *may* send a grievance to the next higher command level (attach a copy of the first grievance). . . . [and] continue to send [the grievance] through the chain of command, up to the Sheriff, who will make the final decision." (Ex. B ¶ 16.3 (emphasis added).)

appeals before filing his § 1983 complaint.  Therefore, Defendants have met their burden of showing that Plaintiff failed to exhaust the administrative remedies available to him at the LCDC, and Plaintiff's complaint, as amended, must be dismissed at step one of the *Turner* two-step process.[11]  *See McGuire-Mollica*, 146 F.4th 1308, 1314 (11th Cir. 2025) (citing *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008)).

## V.  CONCLUSION

Based on the foregoing, it is ORDERED that Defendants' construed unenumerated Rule 12(b) motion to dismiss based on Plaintiff's failure to exhaust available administrative remedies before filing suit (Doc. # 73) is GRANTED, and this action is DISMISSED without prejudice.  In all other respects, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (Doc. # 73) is DENIED as moot.

It is further ORDERED that Plaintiff's motion to Defendants for copies (Doc. # 86) is DENIED as moot.

Final judgment will be entered separately.

DONE this 23rd day of June, 2026.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE

---

[11] In dismissing this action for Plaintiff's failure to exhaust administrative remedies, no opinion is expressed as to the merits of Plaintiff's claims.

18